# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| LINDA MUHAMMAD-SMITH, | ) | CASE NO.1:10CV1790 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| PSYCHIATRIC SOLUTIONS, INC., | ) | ORDER |
| ET AL., | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This case is presently set for trial on August 27, 2012.  Plaintiff alleges several federal and state law claims arising from the termination of her employment with Defendant.  Among her claims are discrimination claims based on race, age, religion and disability and FMLA violations.  On November 28, 2011, Defendants moved for Summary Judgment on all Plaintiff's claims.  On December 8, 2011, Defendants filed a Motion to Strike an Exhibit to their Motion for Summary Judgment (ECF # 31) and Motion to File an Amended Memorandum of Law in Support of Motion for Summary Judgment (ECF #32).  For the following reasons, the Court denies both Motions.

**Motion to Strike Exhibit**

According to Defendants, when they filed their Motion for Summary Judgment they inadvertently attached as an exhibit, a draft of a termination letter for Plaintiff, titled Corrective Action, instead of attaching the actual letter of termination of Plaintiff as was their intent.

According to Defendants, the inadvertently filed draft letter is protected by attorney-client privilege as it was sent to counsel for review and advice and should not have been filed. Defendants filed a Notice of Substitution replacing the draft with the signed, final Corrective Action letter and now asks the Court to strike the draft from the docket.

**Motion to File Amended Memorandum of Law in Support of Defendants' Motion for Summary Judgment**

Based on the same reasoning as their Motion to Strike, Defendants move to Amend their Memorandum in Support of their Motion for Summary Judgment because it refers to the inadvertently produced draft termination letter which, Defendants allege, is protected by attorney-client privilege.  According to Defendants, on October 29, 2010, they produced, with their initial disclosures, the final version of the document entitled Corrective Action signed by Defendants Kennedy and Bailey and dated October 23, 2009.  The document states that Plaintiff will be terminated for certain enumerated reasons.  Defendants contend they intended to present the document to Plaintiff at a meeting scheduled for October 23, 2009.  This meeting followed a disciplinary meeting held on October 20, 2009.  Defendants allege they were unable to present Plaintiff with the Corrective Action letter because Plaintiff left work early on October 23, 2009.

According to Defendants, sometime between October 20 and October 23, 2009, Defendant Kennedy requested legal advice regarding the termination of Plaintiff's employment from outside counsel.  Kennedy requested drafts of two letters, a Corrective Action letter and a request for termination.

When Defendants submitted their original Summary Judgment motion they included a single reference to the Corrective Action letter.  It references the draft Corrective Action letter

2

rather than the intended, signed, final Corrective Action letter.  On December 5, 2011, Plaintiff's counsel notified Defendants' counsel that the draft Corrective Action letter had not been produced in discovery and requested redeposition of Defendants Kennedy, Bailey and Defendants' Fed. R. Civ. P 30(B)(6) representative.  On December 6, 2011, Defendants', believing the draft Corrective Action letter they attached to their Summary Judgment motion was in all respects identical to the final, signed Corrective Action letter already produced in discovery except that the draft lacked signatures, filed their Notice of Filing the signed Corrective Action letter.  Only after further discussions with Plaintiff's counsel did Defedants' counsel realize the two Corrective Action letters contained material differences.  Shortly thereafter, Defendants filed their Motions to Strike and File an Amended Memorandum.

**Plaintiff's Consolidated Response to Defendants' Motion to Strike and Amend**

According to Plaintiff, on May 20, 2011, counsel for Defendants represented to Plaintiff's counsel, in writing, that all responsive documents had been produced, that Defendants possessed no privileged documents and that no privilege log was needed.  Plaintiff asks the Court to deny Defendants' Motion to Strike and Motion to File Amended Memorandum because the draft Corrective Action letter is not subject to attorney-client privilege, any privilege was waived by producing it and Defendants' Motion is procedurally improper.

According to Plaintiff, Defendants' counsel has represented Defendants since June 2009, nearly four months before Plaintiff's termination.  On October 23, 2009, Plaintiff informed Defendants she required medical leave.  On October 29, 2009, Plaintiff contends Defendants' counsel prepared a termination letter for Plaintiff which was delivered to her on November 2, 2009.  Thus, the parties dispute when the decision to terminate Plaintiff was made, with Plaintiff

3

contending it was made only after Plaintiff announced she required FMLA leave.  On May 20, 2009, in a letter to Plaintiff's counsel, Defendants' counsel represented that no privilege log was needed because no documents in Defendants' possession were withheld due to privilege.

On December 6, 2011, Defendants filed a Notice of Filing the signed final Corrective Action letter.  In their Notice of Filing, Defendants stated, "The attached document is a signed version that was exchanged in discovery in this cause of action, and is otherwise identical."  In fact, it was not identical.  According to Plaintiff, the Corrective Action draft and final letters evidence different dates for the finalizing the decision to terminate Plaintiff and evidence different reasons for her termination.

Plaintiff further argues that Defendant Kennedy testified under oath he did not know when the decision to terminate Plaintiff was made and that he created no documents related to Plaintiff's termination until after October 29th.  However, in support of their Motions to Strike and File an Amended Memorandum, Defendants' counsel represents that Kennedy drafted the October 20, 2009 Corrective Action letter and discussed Plaintiff's termination with counsel and, only after discussions with counsel did Kennedy change the contents of the Corrective Action letter.  Plaintiff contends this evidences Kennedy made material misrepresentations in his deposition.

Plaintiff further argues Defendants refuse to stipulate that they will not offer as evidence testimony or documents relating to the October 20, 2009 Corrective Action draft.

Plaintiff contends the documents at issue are not protected attorney-client materials because they contain no communication between client and counsel, contain no request for legal advice and cannot be protected from disclosure since they would not have been protected from

4

disclosure when in the possession of Defendant.  Also, Plaintiff argues Defendants waived any privilege claim because they previously represented they had not withheld any documents on the basis of a privilege.  Further, they waived any claim of privilege by disclosing the document in support of their Motion by filing it on the Court's public docket.  Finally, Plaintiff argues Defendants cannot claim privilege when the draft Corrective Action letter deals with the central issue in this case-i.e. when Plaintiff was terminated- and was proffered by Defendants as proof when the decision was made.  Plaintiff argues Defendants are attempting to use the information as a sword but then attempt to prevent discovery on the matter by claiming privilege.

Plaintiff argues the Federal Rules do not support striking documents attached to dispositive motions, only matters involving pleadings therefore, Defendants' Motion to Strike should be denied.

Plaintiff argues that the Motion to Amend should be denied because Defendants have fundamentally altered their argument.  In the first motion they argue the decision to terminate Plaintiff was made on October 20, 2009 and was based on her insubordination.  However, in the Amended Brief they argue the decision was memorialized on October 23, 2009 and was based on referral source complaints, complaints for internal physicians, ignoring supervisors request and insubordination.  Both cannot be right and Defendants should not be permitted to amend and fundamentally change their version of Plaintiff's termination.  Finally, Plaintiff should be entitled to discovery on the draft Corrective Action letter and any correspondence between counsel and client's regarding the changing reasons for Plaintiff's termination..

Defendants respond that the document was produced inadvertently, that it is protected by attorney-client privilege as a communication between client and counsel, and no waiver has

occurred.

### Standard of Review

On November 8, 2010, the parties entered into a Stipulated Protective Order.  At page 4 of the Order it states, "Inadvertent Production of any document or information without a designation of "Confidential-Subject to Protective Order" shall be governed by Fed. R. Evid. 502. Fed. R. Evid. 502 reads, in pertinent part:

> (b) Inadvertent Disclosure. When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
>
> **(1)** the disclosure is inadvertent;
>
> **(2)** the holder of the privilege or protection took reasonable steps to prevent disclosure; and
>
> **(3)** the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

The Advisory Committee Notes discuss the conflicting rulings over inadvertent communication of privileged information acting as a waiver.  The Committee ultimately opted for the middle of the road analysis.  The Committee explained:

> The rule opts for the middle ground: inadvertent disclosure of protected communications or information in connection with a federal proceeding or to a federal office or agency does not constitute a waiver if the holder took reasonable steps to prevent disclosure and also promptly took reasonable steps to rectify the error. This position is in accord with the majority view on whether inadvertent disclosure is a waiver.

The Advisory Committee laid out a number of factors courts should consider when analyzing whether a party that inadvertently disclosed privileged information has waived the

6

right to assert the privilege.  These factors include:

> the reasonableness of precautions taken, the time taken to rectify the error, the
> scope of discovery, the extent of disclosure and the overriding issue of fairness.
> The rule does not explicitly codify that test, because it is really a set of non-
> determinative guidelines that vary from case to case. The rule is flexible enough
> to accommodate any of those listed factors. Other considerations bearing on the
> reasonableness of a producing party's efforts include the number of documents to
> be reviewed and the time constraints for production.

However, before the Court engages in the above analysis it needs to satisfy itself that the

allegedly inadvertently produced document is indeed privileged.   Defendants argue solely that

the document at issue is protected by attorney-client privilege.

Fed R. Evid. 502 defines attorney-client privilege as "the protection that applicable law

provides for confidential attorney-client communications."  The attorney-client privilege

"protects from disclosure 'confidential communications between a lawyer and his client in

matters that relate to the legal interests of society and the client .' " *Ross v. City of Memphis,* 423

F.3d 596, 600 (6th Cir.2005) (quoting *In re Grand Jury Subpoena ( United States v. Doe* ), 886 F

.2d 135, 137 (6th Cir.1989)). The elements of the attorney-client privilege are:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor
> in his capacity as such, (3) the communications relating to that purpose, (4) made
> in confidence (5) by the client, (6) are at his instance permanently protected (7)
> from disclosure by himself or by the legal advisor, (8) unless the protection is
> waived.

*Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir.1998).

The party asserting the privilege bears the burden of establishing the existence of the

privilege. *United States v. Dakota,* 197 F.3d 821, 825 (6th Cir.1999).

"While the attorney-client privilege protects only confidential communications, the work

product doctrine generally protects from disclosure documents prepared by or for an attorney in

anticipation of litigation." *Regional Airport Authority of Louisville v. LFG, LLC* 460 F.3d 697, 713 (6th Cir. 2006).

Upon consideration of the motions and briefs, the Court finds the documents are not attorney-client privileged documents. The draft Corrective Action letter document does not, on its face, present a communication by client to counsel, contains no indications that it was transmitted to counsel, does not indicate it is a request for legal advice nor does it indicate it is a product of advice of counsel.  The Corrective Action draft does not even indicate it is a draft. Rather, on its face, it demonstrates it is a document prepared in the course of business, was drafted by the client, indicates it is a form used by Laurelwood's HR department and expressly states it is a form used to "reflect the employee's behavior in the performance of work/job related situations."  Nowhere on the face of the document does it indicate it is to be sent to outside counsel for advice.  There is no handwritten modifications, corrections or questions.  Nor is there any caption, stamp or writing evidencing it is a confidential document.  In short, there is nothing on the document exhibiting a communication between client and counsel.  Therefore, it is not a confidential communication.

This issue is similar to one faced by a district court in Tennessee in *Jackson v. Bd. of Ed. of the Memphis City Schools,* No. 07-2497, 2008 WL 747288, (W.D. TN. March 18, 2008). There, a party had inadvertently produced a draft of a document to the opposing party.  The producing party claimed inadvertent production and asked for the documents return claiming attorney-client and work product privilege.  The Tennessee District Court Judge held the document was not protected by attorney-client privilege because it did not reveal any communications between the client and counsel.  The court determined that while the document

itself was not protected by attorney-client privilege, any communications discussing it would be protected.  The court ultimately determined the document was protected under the work product privilege.  In the case before this Court Defendants have not asserted the work product privilege.

Therefore, for the foregoing reasons, the Court finds no attorney-client privilege protection of the draft Corrective Action letter.   However, because the filing of the draft letter did not reveal a confidential communication, there was no waiver of the attorney-client privilege under Rule 502, regarding the conversations between counsel and Defendants involving the reasons for Plaintiff's termination.

Therefore, the Court denies Defendants' Motion to Strike, and denies the Motion to Amend.  Because Defendants noticed the Court of their own substitution of the signed Corrective Action letter prior to the Motions to Strike and Amend, both versions of the Corrective Action letter are docketed and subject to discussion in both parties' briefs.  The Court further notes that Plaintiff filed her Brief in Opposition to Summary Judgment having the benefit of both versions of the Corrective Action letter and Defendants' Reply discussed the differences as well. Therefore, the Court finds no prejudice in considering only Defendants' original summary judgment motion.

IT IS SO ORDERED.


s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

DATED:  June 15, 2012

9