**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LINDA MUHAMMAD-SMITH** | ) | **CASE NO.  1:10CV01790** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | **OPINION AND ORDER** |
| | ) | |
| **PSYCHIATRIC SOLUTIONS, INC.,** | ) | |
| **ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**CHRISTOPHER A. BOYKO, J.**:

## I. ISSUE

This matter comes before the Court upon Defendants' HHC Ohio, Inc., doing business as Windsor-Laurelwood Center for Behavior Medicine ("Hospital"), Supervisor Brenda Bailey ("Bailey"), and Human Resources Director Greg Kennedy ("Kennedy") Motion for Summary Judgment (Doc. 28).  For the following reasons, the Court grants the Motion with respect to the state aiding and abetting claims but denies with respect to the FMLA retaliation, FMLA interference, and Title VII retaliation claims.

## II. PROCEDURAL HISTORY

Plaintiff filed a complaint against Defendants alleging violation of state and federal law for discriminating on the basis of Plaintiff's race (African-American), religion (Muslim), disability, and age.  Plaintiff also alleged retaliation for complaints of discrimination and alleged interference and retaliation under the Family and Medical Leave Act ("FMLA").  Lastly, Plaintiff alleged that Defendants aided and abetted in unlawful discrimination under state law, Ohio Rev. Code § 4112.02(J).

On November 28th, 2011, Defendants moved for Summary Judgment (Doc. 28).  Plaintiff filed a Memorandum in Opposition (Doc. 36) and Defendants filed a Reply in Support of the Motion for Summary Judgment (Doc. 42).

## III. FACTS

Linda Muhammad-Smith ("Plaintiff") began working at Windsor-Laurelwood ("Hospital") as a patient intake assessor.  From October 2008 to March 2009, Plaintiff called off of work three times for medical reasons. (Doc. 36 at 2).  She was reprimanded for those absences in March 2009.  In March 2009, Plaintiff complained that a co-worker raised her voice at Plaintiff.  (Doc. 28-4 at 19-21).  Human Resources Director Greg Kennedy ("Kennedy") and Supervisor Brenda Bailey ("Bailey") met with the parties and encouraged them to treat each other with respect.  (Doc. 28-10 at 2).  On May 20, 2009, Plaintiff complained to Bailey that her co-workers were humiliating and belittling her.  (Doc. 36-1 at 11).

In May 2009, Plaintiff admitted a patient to the Hospital who arrived with a pink slip. Procedure required that patients with pink slips see a psychiatrist before being admitted.

(Doc. 28-7 at 38).  Plaintiff admitted the pink slipped patient after being instructed to by Dr. Adelman, who is not a psychiatrist; subsequently, Plaintiff received criticism from her white co-workers for violating Hospital's procedure.  (Doc. 36 at 3).  On May 29, 2009, Plaintiff, who is African-American, complained to Kennedy and Bailey that she believed her co-workers' criticism was "racially motivated."  (Doc. 36-1 at 14; Doc. 15 at 3).  On June 3rd, Bailey determined that Plaintiff violated Hospital's policy and issued her a written disciplinary action.  (Doc. 28-7 at 46).

Also on June 3rd, Plaintiff took another absence for medical reasons, which was incorporated into her disciplinary record.  (Doc. 36-1 at 22).  In June 2009, Bailey prepared a performance review which Plaintiff asserts contained no marks in the "improvements needed category."  (Doc. 36 at 4).  On June 22, 2009, Plaintiff filed a charge of discrimination with the EEOC claiming discrimination on the basis of age, race, religion, and retaliation.  (Doc. 36-1 at 23).

In July 2009, Hospital psychiatrist, Dr. Ray, complained that Plaintiff failed to give him "a complete and thorough patient assessment."  (Doc. 28-1 at 5).  Throughout the summer, Bailey received multiple complaints about Plaintiff from referral sources.  (Doc. 28-7 at 48-63).  On September 15, 2009, Kennedy met with Plaintiff to discuss the complaints and Plaintiff dismissed them as vague.  (Doc. 28-4 at 45).  On October 7, 2009, Plaintiff sent a letter to Bailey complaining of discriminatory treatment in the scheduling of work shifts. (Doc. 36-1 at 45).  Also in October, Plaintiff incorrectly entered call information into Hospital's computer system on a number of occasions.  (Doc. 28-7 at 67).  Bailey informed Plaintiff of the proper procedure by leaving notes for Plaintiff.  *Id*. at 68.

-3-

On October 19th, Bailey left a note asking Plaintiff to meet her the following morning, after Plaintiff's night-shift ended.  By all accounts the meeting did not go well.  Both Bailey and Kennedy believe that Plaintiff seemed "uncaring" about the performance issues and complaints.  (Doc. 28-7 at 73).  Plaintiff says that she was "tired" after completing her shift and just wanted to take the disciplinary form home with her.  (Doc. 28-4 at 35-36).  Bailey describes Plaintiff's demeanor as "dismissive" and testified that Plaintiff refused to sit down during the meeting.  (Doc. 28-7 at 74-75).  The meeting lasted three minutes.  According to Bailey, after the meeting on October 20th, Kennedy and Bailey decided to terminate Plaintiff.  *Id.* at 78.  Plaintiff worked her usual 11:00 P.M. shifts on October 20th and 21st.  (Doc. 36-1 at 35).  Defendants contend that on October 22nd, after Bailey's workday, but before Plaintiff's 11:00 P.M. shift began, Bailey left a note for Plaintiff to meet with her and Kennedy the following morning.  (Doc. 28-7 at 79).  Bailey and Kennedy say they planned to notify Plaintiff that morning that she had been terminated.  *Id*.  Kennedy now admits that he was never scheduled to meet with Plaintiff on the 23rd.  (Doc. 36-2 at 47-48).

Instead of meeting with Bailey and Kennedy on Friday, October 23rd, Plaintiff left work early due to high blood pressure.  Plaintiff went to her doctor that day and the doctor prescribed leave for an indeterminate period.  (Doc. 36-1 at 49).  Plaintiff argues in her brief that she called Defendants later that day in order to find out what was required for leave under the FMLA.  (Doc. 36 at 7).  When Plaintiff did not show for her meeting on the 23rd, the Senior Human Resources Coordinator, Mim Shaffer ("Shaffer"), states that Kennedy instructed her to, and she did, change Plaintiff's status to terminated on that day.  (Doc. 28-6 at 2).  On October 26th, Defendant received FMLA paperwork from Plaintiff's doctor and

-4-

sent the necessary FMLA forms in response.  (Doc. 36 at 7).  On October 22nd, Plaintiff

mailed a letter to Kennedy complaining that the performance improvement plan was

retaliation for her previously filed EEOC charge.  (Doc. 36 at 7).  Defendants did not receive

the letter until October 26th.  *Id.*

At some point, an undated termination letter was sent to Plaintiff.  Shaffer initially

testified that the termination letter was created and mailed on October 23rd, 2009.  (Doc. 36-4

at 15-18).  However, the metadata obtained in discovery revealed that the document was

created on October 29th, at 4:53 P.M.  (Doc. 36 at 8; Doc. 33-3 at 16).  Kennedy admits that

defense counsel provided the letter on October 29, 2009.  (Doc. 36-2 at 7).  Plaintiff presents a

report she argues shows that her employment status in Hospital's computer system was

changed from 'active' to 'terminated' on October 29th, at 4:47 P.M.  (Doc. 36-5).  Defendants

contend that this computer report is generated at the end of the week to reflect the whole

week's employee status changes and that the report is "actually only proof of when that form

was created, not when the data ... was entered in the computer system."  (Doc. 42 at 9).

## IV. LAW AND ANALYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See*

Fed. R. Civ. P. 56(a).  The burden is on the moving party to conclusively show no genuine

issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing*

*Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and

all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.  This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hosp. Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trs.*, 980 F.2d 399, 404-06 (6th Cir. 1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.   Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**B. Family and Medical Leave Act**

   **1. Retaliation**

   Circumstantial evidence of retaliation under the FMLA must pass the *McDonnell Douglas* test in order to survive a motion for summary judgment.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  In order to establish a prima facie case of discrimination under *McDonnell Douglas*, a plaintiff must show: "(1) he engaged in protected activity, (2) he was subject to an adverse employment decision, and (3) a causal connection existed between the adverse employment action and the protected activity."  *Clark v.*

*Walgreen Co.*, 424 F. App'x 467, 473 (6th Cir. 2011).  After establishing a prima facie case of discrimination, the defendant then bears the burden of "producing some non-discriminatory reason" for the termination.  *DiCarlo v. Potter*, 358 F.3d 408, 420 (6th Cir. 2004) (citing *Williams v. Nashville Network*, 132 F.3d 1123, 1131 (6th Cir. 1997)).

Defendants argue that Plaintiff's claims under the FMLA should be dismissed because the termination decision was made before Plaintiff made the request for leave under the FMLA.  They argue that if Defendants did not know about the FMLA request, then the request could not have been the cause of the termination.  According to Defendants, Kennedy and Bailey decided to end Plaintiff's employment on October 20, 2009.  (Doc. 38-5 at 199-200).  Shaffer testified that Kennedy informed her on October 22nd of the plan to terminate Plaintiff at a scheduled meeting with Plaintiff on the morning of October 23, 2009.  (Doc. 28-6 at ¶ 5).  After Plaintiff missed the meeting, Shaffer testified that Kennedy instructed her on October 23rd to change Plaintiff's employment status.  (Doc. 28-6 at ¶ 6).

Plaintiff argues that she made the request for FMLA leave before she was actually terminated.  In her Memorandum in Opposition to Defendants' Motion for Summary Judgment, Plaintiff alleges that she "called Defendants on October 23 to 'ascertain what [she] needed to do for FMLA.'" (Doc. 36 at 7) (citing Doc. 38-11 at 54).  She says that she spoke to Shaffer and left a voicemail for Bailey during work hours on October 23rd.  (Doc. 36-8 at 3-5).  When asked if Plaintiff spoke with Kennedy about her request for leave, Plaintiff says she discussed the FMLA paperwork with Kennedy "on the 28th - - 27th or 28th, perhaps." (Doc. 38-11 at 64).  In contrast, Defendants assert that "Plaintiff *never* requested any medical leave of absence until she faxed in a doctor's note on Monday, October 26, 2009." (Doc. 28-1 at

16).

The Court must first resolve whether there is evidence of causality where the termination decision was made before the protected activity.  The text of the *McDonnell Douglas* test requires causality between the protected activity and the "employment action." *Clark*, 424 F. App'x at 473.  However, if Defendants did not know of the requested medical leave when they decided to terminate, the medical leave could not have caused the termination.

The Supreme Court held that causation was not established in a Title VII retaliation action where evidence showed the supervisor decided to transfer the plaintiff before the plaintiff had served the defendant in a lawsuit.  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001).  The Supreme Court held that the fact the actual transfer (employment action) happened after the plaintiff's law suit (protected activity) was "immaterial in light of the fact that [the defendant] concededly was contemplating transfer before it learned of the suit." *Id.*  The Court went on to hold that "[e]mployers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Id*.  The Sixth Circuit similarly held that there is no evidence of causality where the decision to make the employment action occurred before the protected activity. *Reynolds v. Extendicare Health Servs., Inc.*, 257 F. App'x 914, 920 (6th Cir. 2007) ("it is not appropriate to view placing [Plaintiff] on the PIP as being causally related to her filing of the complaint because the PIP decision had been made prior to the protected action").

However, some district courts have held that there is no evidence of causality only

where the decision predates the protected activity *and* the decision was communicated to the plaintiff.  *See Regan v. Natural Resources Group, Inc.*, 345 F. Supp. 2d 1000, 1011 (D.Minn 2004).  This Court has held that causation was not established where the plaintiff "was not notified of his termination until after he requested FMLA leave" and where the date of the decision to terminate was disputed.  *Chester v. Quadco Rehabilitation Center*, 484 F. Supp. 2d 735, 744 (N.D. Ohio 2007).  However, neither *Breeden* or *Reynolds* indicates that a decision must be communicated to the plaintiff in order to disprove causality.  In fact, it is clear that the "key issue" in determining causality is whether there was "retaliatory motive when making the decision."  *Regan*, 345 F. Supp. 2d at 1011.  If Defendants succeed in showing that the decision to terminate occurred before the request for FMLA leave, then the execution of that decision is not evidence of causality.

The Court must next determine if Plaintiff identified any fact in the record indicating that she discussed FMLA leave with Defendants prior to the *decision* to terminate. Defendants have presented substantial evidence indicating that Kennedy and Bailey made the decision to terminate Plaintiff before the morning of the 23rd, before Plaintiff went to the doctor, and before Plaintiff alleges she called anyone regarding FMLA.  A reasonable jury could not find that Plaintiff requested medical leave before Defendants made the decision to terminate based only on Plaintiff's assertion that she "called Defendants on October 23." (Doc. 36 at 7).

Plaintiff argues that the decision to terminate was not actually made until October 29, 2009, as indicated by Hospital's computer system.  Plaintiff presents audit records indicating that Plaintiff's employment status was not changed from "active" to "terminated" until

October 29th.  Defendants argue that the "Employee Change Audit report is run at the end of every week ... to reflect all employee status changes." (Doc. 42 at 8).  Accordingly, the October 29th date is merely proof of when the "form was created, not when the data ... was entered."  *Id*. at 9.  Shaffer declared that on October 23rd, Kennedy ordered her to change Plaintiff's employment status in the computer system.  (Doc. 28-6 at ¶ 6).  Defendants contend that Plaintiff is misreading the form.  Plaintiff does not present any testimony supporting her interpretation of the form.  Therefore, the audit record is insufficient evidence by itself to create a material issue of fact with regard to whether the decision to terminate occurred before the FMLA request.

Plaintiff next argues that causation is established here because of the short amount of time between FMLA leave and termination.  A plaintiff establishes a causal connection where a plaintiff "proffer[s] evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'" *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 862 (6th Cir. 1997) (citing *Zanders v. National R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990)).  Plaintiff cites to a pair of Sixth Circuit decisions finding a causal connection based on a temporal proximity of two and three months respectively.  (Doc. 36 at 11, fn.86) (citing *Goeller v. Ohio Dept. of Rehab. and Corr.*, 285 F. App'x 250, 257 (6th Cir. 2008) and *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004)).  However, to prove causation, the cause must come before the effect.  *See Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (temporal proximity is evidence of causality "[w]here an adverse employment action occurs very close in time *after* an employer learns of a protected activity.") (emphasis added).  Plaintiff has not created a genuine question as to whether the

-10-

decision to terminate came before the request for medical leave.  Therefore, evidence that the request occurred very soon after the decision to terminate is not evidence of causality.

Plaintiff next argues that a jury could infer causation from the evidence that Defendants previously disciplined Plaintiff for excessive medical absences.  Defendants issued two performance improvement plans in response to Plaintiff's absences in March and June 2009.  (Doc. 36-1 at 6, 22).  It is true that employers may not prohibit an employee from "attempt[ing] to exercise FMLA rights," 29 C.F.R. § 825.220(c); however, there is no indication that Plaintiff's absences in March and June were attempts to exercise those rights.  Reprimand for un-excused absences that occurred months before Plaintiff ever mentioned exercising FMLA rights is not sufficient evidence to create an issue of material fact regarding causation.

Finally, Plaintiff argues that Defendants' explanation of the timing of the termination decision is "not credible" because Defendants sent FMLA forms to Plaintiff's doctor after Defendants had supposedly terminated Plaintiff.  (Doc. 36 at 16).  Defendants argue that even though Plaintiff was terminated, Shaffer and Kennedy sent the FMLA forms in order to capture "any absences Plaintiff had taken prior to the date she was terminated," which would "increase her final paycheck to account for additional unused vacation."  (Doc. 28-1 at 8-9).  However, Plaintiff shows that Defendants' FMLA policy "requires use of vacation concurrent with FMLA time." (Doc. 36 at 16).  The Sixth Circuit has held that "close case[s]" are matters for the jury to decide. *See Johnson v. Kroger Co.*, 319 F.3d 858, 869 (6th Cir. 2003). The fact that Defendants sent the FMLA paperwork is internally inconsistent with Defendant's argument that they had already decided to terminate Plaintiff.  This fact is

sufficient to create a genuine issue of causation because a reasonable jury could find that the decision was not made before the request for FMLA leave.  Therefore, Plaintiff has presented a prima facie case of retaliation under the FMLA.

### 2. Pretext

Even though Plaintiff has shown a prima facie case, Defendants argue that Plaintiff has failed to show pretext.  Under the *McDonnell Douglas* test, once a prima facie case is proven, the burden "then shifts to [the defendants] to articulate a legitimate, nondiscriminatory reason" for the termination.  *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001).  If Defendants can show a legitimate reason here, then Plaintiff will have "the burden of showing that the articulated reason is in reality a pretext to mask discrimination." *Id*.

Defendants presented sufficient evidence to establish a nondiscriminatory reason for the termination.  Bailey testified that many referral sources complained about Plaintiff.  (Doc. 42-6 at 162-77).  Plaintiff refused to follow instructions from a supervisor.  *Id*. at 178-83.  A doctor complained about Plaintiff's performance.  (Doc. 42-4 at 27).  Also, Bailey believed that Plaintiff displayed insubordination during the October 20th meeting because Plaintiff was unwilling to improve her performance.  (Doc. 28-7 at 77).  In response to the legitimate reasons offered by Defendants, Plaintiff contends that these reasons are merely pretext for discriminatory retaliation.

#### a. Inconsistent/Changing Reasons

Plaintiff alleges that Defendants' reasons for termination have changed, justifying a finding of pretext.  (Doc. 36 at 11) (citing *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579,

592 (6th Cir. 2002)).  When the proffered reasons for termination "are inconsistent at best, if not outright contradictory" then Plaintiff has presented evidence of pretext.  (Doc. 36 at 12) (citing *Peck v. Elyria Foundry Co.*, 347 F. App'x 139, 146 (6th Cir. 2009)).  In order to show inconsistency, Plaintiff points to the two termination reasons offered by Defendants: insubordination and work performance.  Plaintiff argues that the first draft of the termination letter only referred to insubordination, whereas the final draft referred to performance problems.  *Id*.

Plaintiff has not cited any case where termination reasons of insubordination and performance were found *per se* inconsistent.  Nor do the inconsistencies in the cases cited by Plaintiff appear analogous to the present case.  In *Cicero*, the Sixth Circuit held reasons were inconsistent where the employer had recently acquired the company and terminated employees in order to replace them with employees of its own; later during litigation, the company claimed that the employee was terminated due to poor work performance.  *Cicero*, 280 F.3d at 592.  The Sixth Circuit also held there were inconsistent statements in *Peck*, where a manager testified that the plaintiff "did not apply" for the position but later admitted that she "did consider [the plaintiff for the position] more broadly, yet passed because she received damning input from a former coworker."  *Peck*, 347 F. App'x at 146.  However, this is not a case where an employer's "unequivocal assertion ... simply cannot, on its terms, be reconciled with its later explanations."  *See Eades v. Brookdale Senior Living, Inc.*, 401 F. App'x 8, 13 (6th Cir. 2010).

There is no evidence of inconsistency.  Defendants are correct that termination for the reason of insubordination is not mutually exclusive with termination for the reason of work

performance.  ("Whether Plaintiff's inability or refusal to ... 'correct' her deficiencies is denoted as 'insubordination' or a specific pattern of problematic behavior, the undeniable fact remains that the ... non-retaliatory reason has not changed."  Doc. 42 at 9).  The documents are also not textually inconsistent, as the draft letter (professing an insubordination reason) acknowledged that Plaintiff was meeting with Defendants "to discuss her performance." (Doc. 28-3).  Plaintiff has not shown that the reasons for termination are "so incoherent, weak, inconsistent, or contradictory that a rational jury could conclude the reasons were not believable.  *Peck*, 347 F. App'x at 147.

### b. False Reasons

Next, Plaintiff argues that there is sufficient evidence for a jury to conclude that the proffered reasons for discrimination are false.  Plaintiff points to *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000), where the Supreme Court held that "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."  The Supreme Court held that the trier of fact is "entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'"  *Id.* (citing *Wright v. West*, 505 U.S. 277, 296 (1992)).

Plaintiff presents several pieces of evidence as proof of falsity.  First, Plaintiff points out that Kennedy could not recall any specific insubordinate conduct by Plaintiff in his deposition.  (Doc. 36-2 at 32-34).  Second, Plaintiff argues that Defendants gave false testimony as to when the termination letter was written.  (Doc. 36 at 14).  Kennedy admitted that Shaffer falsely testified that she mailed the letter on October 23, because the metadata shows it was created on October 29.  (Doc. 36-2 at 51).  Kennedy also mistakenly believed

that the letter was written before October 29th, despite the metadata evidence.  *Id*. at 42.

Third, Bailey admitted that Defendants, on October 20th, did not have cause for termination

based on Plaintiff's performance issues.  (Doc. 38-5 at 75-76).

Defendants counter that a witness's inability to remember a date is not evidence of

pretext.  They cite to several non-binding authorities which have held that a witness's inability

to recall a date is insufficient evidence to establish pretext.  (Doc. 42 at 6).  Defendants are

correct that Kennedy's inability to remember exactly when the termination letter was written

is not clearly false and not alone sufficient to establish pretext.  However, Bailey's admission

that Defendants did not have cause for termination based on performance is persuasive

evidence of pretext.  When considered in conjunction with the false testimony regarding the

creation date of the termination letter, a jury could reasonably find the Defendants' reasons for

termination are pretextual.   Because Plaintiff has established a prima facie case and pretext,

Defendants' Motion for Summary Judgment with respect to the retaliation claim is denied.

### 3. Interference/Entitlement

Defendants next argue that Plaintiff's claim of interference with FMLA rights fails

because Defendants did not refuse or know of any medical need for leave before terminating

Plaintiff.  In order to establish an interference claim, Plaintiff must show that:

(1) she was an eligible employee, (2) [Defendant] is a covered employer, (3) she was

entitled to leave under the FMLA, (4) she gave [Defendant] notice of her intent to take

leave, and (5) [Defendant] denied her FMLA benefits or interfered with FMLA rights

to which she was entitled.

*Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004).  The only element at

issue here is "whether the employee was due FMLA rights which were unlawfully interfered with."  (Doc. 28-1 at 17).  In response, Plaintiff asserts that there is a material issue of fact regarding whether Plaintiff was fired after requesting medical leave.

First, Plaintiff contends that there is a material issue of fact regarding when Plaintiff was terminated.  Plaintiff argues that "there is no evidence of Defendants' decision to terminate Muhammad-Smith prior to October 29" because that is when the termination letter was created.  (Doc. 36 at 13).  Plaintiff alleges that Shaffer gave, and Defendants relied upon, false testimony regarding when the termination letter was created.  (Doc. 36 at 14-15).  Additionally, the parties agree that Defendants sent FMLA paperwork to Plaintiff's doctor to complete on October 26, 2009.  Plaintiff persuasively argues that "[h]ad she actually been terminated [on October 26], obviously no need for FMLA approval would arise."  (Doc. 36 at 16) (While Defendants argue the FMLA form was sent to allow Plaintiff to recoup some vacation time, this seems inconsistent with Hospital's policy.  *See* (Doc 36 at 16) and (Doc. 36-1 at 53-57)).  Defendants argue Shaffer's testimony that she changed the termination status on October 23rd is "undisputed evidence" demonstrating that "termination was effective October 23, 2009."  (Doc. 28-1 at 17).  But as mentioned above, Plaintiff does dispute this evidence by presenting the audit record she claims proves the data wasn't entered until the 29th.  (Doc. 36-5).  Additionally, Kennedy testified that the termination letter wasn't drafted until the 29th.  (Doc. 36-2 at 7).

Here, it is true that a "reasonable jury could find that Plaintiff was still employed by Defendants on the date she requested FMLA leave."  *See Maynard v. Ashland, Inc.*, No. 2:07-cv-794, 2009 WL 4806218 at *6 (S.D. Ohio Dec. 10, 2009).  Defendants argue that an

interference claim is not satisfied when the employee requesting FMLA leave was "terminated for reasons not related to his or her FMLA request." *Arban v. West Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). However, for interference claims, "[t]he employer's intent is not a relevant part of the ... inquiry." *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006). Even though the "FMLA is not a strict-liability statute," Plaintiff must "establish that the employer's violation caused [her] harm" in order to establish a claim of interference. *Id*. at 507-08. Defendants do not contest anywhere in their brief that the termination caused Plaintiff harm. Because there is evidence that Plaintiff made the request for FMLA leave before being terminated, Plaintiff has established a genuine issue of material fact regarding whether Plaintiff was denied FMLA benefits that she was entitled to.

## C. Title VII

### 1. Discrimination Claims

The Complaint states claims of racial, religious, disability, and age discrimination and harassment. Plaintiff notified Defendants that she would not pursue these claims (Counts I-VI of the Complaint). (Doc. 28-2). Because the claims are abandoned, the Court grants Summary Judgment with respect to the Title VII discrimination claims. For the same reasons, the Court grants Summary Judgment with respect to the claims under Ohio Revised Code § 4112 and the age discrimination claim under the Age Discrimination in Employment Act. However, Plaintiff maintains her Title VII claim of retaliation.

### 2. Prima Facie Case

Defendants also seek summary judgment on the Title VII retaliation claim. Plaintiff alleges that termination by Defendants was retaliation for internal complaints about racial

discrimination and for the filing of an EEOC claim.  In order to demonstrate a prima facie case of retaliation under Title VII, a plaintiff must establish that: "(1) she engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action ... and (4) there was a causal connection between the protected activity and adverse employment action."  *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).  Defendants contest the causal element.  To prove that the protected activity was the cause of termination, Plaintiff must present evidence sufficient to draw an inference that "the adverse action would not have been taken had the plaintiff not filed a discrimination action."  *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d at 861 (6th Cir. 1997)).

Defendants argue that more than four months passed between Plaintiff's EEOC charge in June and her termination in October.  The Sixth Circuit has held that a time period of four months is "insufficient to support an inference of retaliation."  *Cooper v. North Olmsted*, 795 F.2d 1265, 1272-73 (6th Cir. 1986).  But Plaintiff does not rely solely on her June EEOC charge to establish causation.  Rather, Plaintiff contends that she complained of mistreatment based on race on multiple occasions and was subsequently punished.  (Doc. 36 at 19). Additionally, on October 22nd, Plaintiff complained to Defendants that she was being retaliated against for the EEOC charge she filed.  (Doc. 36 at 7).  Defendants received the complaint on October 26th, days before Defendants issued an undated termination letter.  *Id.* at 8.

Defendants argue that Plaintiff's internal complaints are not 'protected activity' because "she never specifically referred to some type of purported illegal discrimination."

-18-

(Doc. 28-1 at 10).  However, Plaintiff *did* refer to specific discrimination.  For example, on May 29th, Plaintiff complained to Kennedy and Bailey that she believed her co-workers' criticism was "racially motivated."  (Doc. 36-1 at 14).  Also, Plaintiff complained on October 7th, that she was experiencing "differential treatment" regarding work shift scheduling.  (Doc. 36-1 at 46).  Additionally, these internal complaints regarding racial discrimination and the EEOC charge all occurred before Defendants allege they made the *decision* to terminate. Plaintiff's repeated complaints about racial discrimination and the fact that Plaintiff complained days before the termination letter may have been drafted are sufficient evidence for a reasonable jury to find that she was retaliated against on the basis of race.

Plaintiff can also establish a prima facie case of discrimination using direct evidence. Direct evidence is "evidence, which if believed, does not require an inference to conclude that unlawful retaliation motivated an employer's action." *Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429 F. App'x 524, 534 (2011) (citing *Spengler v. Worthington Cyclinders*, 615 F.3d 481, 491 (6th Cir. 2010)).  Bailey specifically noted that Plaintiff had filed an EEOC charge in Bailey's performance review plan prepared for Plaintiff.  (Doc. 36-1 at 22).  No inference is required to find that the EEOC charge played a role in Bailey's decision to discipline.  Therefore, there is sufficient direct evidence to establish retaliation.

### 3. Pretext

Lastly, Defendants argue that Plaintiff's Title VII retaliation claim fails because Plaintiff is unable to show that Defendants' stated reasons for termination are pretext.  For the reasons stated in Part IV.B.2.b, Plaintiff is able to present a genuine question of material fact regarding whether Defendants' reasons for termination are false, and therefore pretextual.

-19-

However, even without these false statements, Plaintiff presents evidence of prior internal complaints based on racial discrimination, as well as a prior EEOC charge.  These facts are more than sufficient for a reasonable jury to find that Defendants terminated Plaintiff because of her complaints.  Because Plaintiff can establish a prima facie case of retaliation and pretext, Defendants' Motion for Summary Judgment is denied with respect to Title VII.

**D. State Aiding and Abetting- R.C. 4112.02(J)**

Lastly, Defendants ask for summary judgment with respect to the aiding and abetting claims.  Ohio law makes it unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice."  O.R.C. § 4112.02(J).  In paragraph 72 of the Complaint, Plaintiff alleges that "Windsor-Laurelwood and UHS aided and abetted each other in discriminating against" Plaintiff.  (Doc. 15 at 10).  Neither side disputes that UHS was not served and is still not a party to this suit.  Defendants argue that because UHS is not a party, and paragraph 72 only mentions UHS and Windsor-Laurelwood, that Windsor-Laurelwood cannot "aid or assist [it]self."  (Doc. 28-1 at 20).  Plaintiff counters that paragraph 73 of the complaint mentions "Defendants' violation" generally, which would include Defendants Bailey and Kennedy.  (Doc. 36 at 20).

Plaintiff did not allege 'Defendants' generally aided and abetted; rather, Plaintiff specifically alleged that UHS and Windsor-Laurelwood aided and abetted.  It is not sufficient to point to general language elsewhere in the complaint.  UHS was not served and Plaintiff does not contend that Windsor-Laurelwood can aid and abet itself.  Therefore, Defendants are granted Summary Judgment with respect to the aiding and abetting claims.

-20-

## V. CONCLUSION

For the foregoing reasons, the Court denies Summary Judgment with respect to the FMLA retaliation and interference claims.  Plaintiff has established a prima facie case, has shown evidence of pretext and there is a genuine issue as to when Plaintiff was actually terminated.  The Court also denies Summary Judgement with respect to the Title VII retaliation claim because Plaintiff has established a prima facie case and has shown evidence of pretext.  Lastly, the Court grants Summary Judgment with respect to the state aiding and abetting claims because the Complaint specifically alleges two parties aided and abetted but Plaintiff failed to serve one of those parties.

**IT IS SO ORDERED.**

s/ Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**UNITED STATES DISTRICT JUDGE**

**DATED:  June 29, 2012**